Cleonilde Nunes DE MELO, Appellant,

v.

LEDERLE LABORATORIES, a DIVISION OF AMERICAN CYANAMID CORPORATION, Appellee.

No. 85–5339.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1986.

Decided Sept. 24, 1986.

Kenneth P. Griswold, St. Paul, Minn., for appellant.

Peter W. Sipkins, Minneapolis, Minn., for appellee.

Before JOHN R. GIBSON, Circuit Judge, SWYGERT,[*] Senior Circuit Judge, and FAGG, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Cleonilde Nunes de Melo, a citizen of Brazil, appeals the judgment of the district court[1] dismissing her products liability claims against Lederle Laboratories on grounds of *forum non conveniens*. De Melo argues on appeal that the district court abused its discretion in concluding that Brazil was an adequate alternative forum for this litigation, and that on balance, this litigation would be more convenient for the parties and the available fora if tried in Brazil. We affirm.

Lederle Laboratories, a division of American Cyanamid Corporation, developed, tested, patented, and manufactured the drug Myambutol. American Cyanamid is a Maine corporation with headquarters in New Jersey; Lederle is a New York corporation, and maintains its main laboratories, where Myambutol was developed and manufactured, in New York. Both American Cyanamid and Lederle are licensed to do business in Minnesota. American Cyanamid also licenses the foreign manufacture of Myambutol. Under a licensing agreement, Myambutol is manufactured, marketed and distributed in Brazil by a Brazilian corporation, Cyanamid Quimica de Brasil (CQB), a wholly-owned subsidiary of American Cyanamid.

De Melo, a school teacher in her forties, was treated in Brazil for pulmonary tuberculosis. In 1976, in the course of that treatment, de Melo's Brazilian physicians prescribed Myambutol. After a few months of ingesting the drug, de Melo developed optic atrophy, and became permanently blind. The package insert to Myambutol manufactured by CQB, containing information about the appropriate uses and hazards of the product, is a Portuguese translation of an English version prepared by Lederle for domestic distribution. In 1976, the English-language package insert

warned of possible permanent vision loss; the Portuguese version, however, warned only of temporary vision loss. In late 1975, Lederle sent a circular to foreign manufacturers of the drug, including CQB, advising that the package insert be amended to include a statement that repeated ingestion of the drug could cause irreversible reduced visual acuity.

De Melo filed suit in federal district court in Minnesota, seeking recovery under theories of strict liability, negligence, failure to warn, breach of express and implied waranties, and fraudulent concealment. The thrust of de Melo's claims is that Lederle had complete control over the manufacture, packaging, and labeling of Myambutol produced and distributed by CQB; that Lederle knew or should have known that Myambutol causes permanent, not temporary, loss of vision; and that it intentionally or negligently failed to provide the appropriate warnings with Brazilian manufactured Myambutol.

Lederle moved to dismiss the action on the ground of *forum non conveniens*, suggesting that Brazil was the more appropriate forum. The district court, applying the balancing test set forth by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), granted the motion contingent upon Lederle's acceptance of four conditions: first, Lederle consent to suit and accept service of process in Brazil in any civil action brought by de Melo on her claim; second, Lederle agree to make available any documents or witnesses within its control necessary for the fair adjudication of any such claim; third, Lederle consent to pay any judgment rendered against it by a Brazilian court in any such action; and fourth, Lederle agree to waive any statute of limitations defense which did not exist at the time de Melo filed the present action.

The district court first found that Brazil presented an adequate alternative forum to

---

[*] The HONORABLE LUTHER M. SWYGERT, Senior Circuit Judge for the Seventh Circuit, sitting by designation.

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

resolve this dispute. The court noted that Lederle had consented to jurisdiction and service of process in Brazil, and found, based upon letters from Brazilian attorneys submitted by Lederle, that de Melo's claims stated a cause of action under Brazilian law. The court also rejected de Melo's argument that the lack of contingency fee arrangements in Brazil, delays in civil courts, and absence of punitive damages or recovery for pain and suffering, made meaningful recovery so unlikely as to render Brazil an inadequate forum for this litigation. The court found that de Melo had recourse to legal assistance through contingency fee arrangements or indigent legal services, and would therefore be able to prosecute her suit. It also concluded, based on the Supreme Court's decision in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), that the limitations on damages did not render the forum inadequate.

The district court next found that the balance of private interests favored litigation in Brazil. While the court acknowledged that evidence relating to the adequacy of the warnings is located predominantly in the United States, it concluded that litigation in this country would leave Lederle without access to compulsory process to secure evidence in Brazil relating to the manufacture and distribution of Myambutol in Brazil and the circumstances surrounding de Melo's treatment. The converse problem would not exist in Brazil, the court noted, because judgment was conditioned on Lederle's agreement to supply all relevant witnesses and documents in Brazil. The court also noted that suit in the United States would prevent Lederle from impleading potential third party defendants, such as de Melo's physicians or CQB, and thereby prevent resolution of all claims in one trial.

Finally, the district court found that the public interest factors weighed in favor of Lederle. Relying on similar district court cases, the court concluded that Brazil had the strongest interest in regulating a drug that was manufactured, distributed, and ingested in that country, and that had

harmed one of its citizens. The court noted, moreover, that under Minnesota choice of law rules, Brazilian law would govern the litigation. The district court, thus, concluded that its lack of familiarity with Brazilian law and that country's greater interest in resolving a "local" controversy both strongly suggested that Brazil was the appropriate forum.

De Melo argues that the district court abused its discretion in dismissing this action on the basis of *forum non conveniens*. She contends that Brazil is not an adequate alternative forum for tort litigation of this kind because recovery is severely limited, because she is without the financial ability to maintain the suit absent a contingency fee arrangement, which she contends is rare in Brazil, and because the legal system in Brazil generally is "archaic." She further argues that the district court erred in concluding that the balance of private and public interests weighed in favor of a Brazilian forum.

### A.

■ Under the doctrine of *forum non conveniens*, federal district courts have inherent power to resist the imposition of jurisdiction even where authorized by statute if "the litigation can more appropriately be conducted in a foreign tribunal." *Gulf Oil Corp. v. Gilbert*, 330 U.S. at 504, 67 S.Ct. at 840 (quoting *Canada Malting Co. v. Paterson Steamships, Ltd.*, 285 U.S. 413, 422–23, 52 S.Ct. 413, 415, 76 L.Ed. 837 (1932)). In *Gilbert*, the Supreme Court set out a series of considerations to guide the district court in applying the doctrine: initially, the district court must find that there exists an adequate alternative forum for the litigation; the court must then balance factors relative to the convenience of the litigants, referred to as the private interests, and factors relative to the convenience of the forum, referred to as the public interests, to determine which available forum is most appropriate for trial and resolution. *Piper Aircraft Corp. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d

419. The district court's decision to dismiss an action on the grounds of *forum non conveniens* may be reversed only if it is found to be an abuse of discretion. *Id.* at 257, 102 S.Ct. at 266. "[W]here the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Id.*[2]

### B.

■ The doctrine of *forum non conveniens* "presupposes at least two forums in which the defendant is amenable to process * * *." *Gilbert,* 330 U.S. at 506–07, 67 S.Ct. at 842. Thus, "[a]t the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum." *Piper Aircraft,* 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22. This requirement is satisfied, ordinarily, if the defendant is amenable to process in the alternative jurisdiction, *id.; Gilbert,* 330 U.S. at 506–07, 67 S.Ct. at 842. Here, the district court ensured this by conditioning dismissal on Lederle's concession to jurisdiction and service of process in Brazil. However, "in rare circumstances," the remedy provided in the alternative forum may be "so clearly inadequate or unsatisfactory that it is no remedy at all * * *." *Piper Aircraft,* 454 U.S. at 254, 102 S.Ct. at 265. In such cases, the alternative forum is not adequate, for "dismissal would not be in the interests of justice." *Id.*

De Melo contends that the unavailability under Brazilian law of punitive damages and recovery for pain and suffering suggests that any recovery she may obtain in Brazil will be grossly inadequate to compensate her for her injuries and deter future misconduct by multinational corporations like the defendant. Moreover, she

argues, she is financially unable to prosecute this suit absent some form of contingency arrangement, which, she claims, is rare in Brazil. Thus, the possibility of recovery, however minor, is even more remote.

We do not believe that the district court abused its discretion in finding that Brazil is an adequate alternative forum for this litigation. First, the Supreme Court explicitly held in *Piper Aircraft* that, ordinarily, the fact that the alternative forum's substantive law is decidedly less favorable to the plaintiff should not be given substantial weight in *forum non conveniens* determinations. 454 U.S. at 247, 102 S.Ct. at 261.[3] Where the alternative forum offers a remedy for the plaintiff's claims, and there is no danger that she will be treated unfairly, the foreign forum is adequate. *Id.* at 255, 102 S.Ct. at 265. Affidavits from Brazilian attorneys make clear that de Melo's claims state a cause of action under Brazilian law and that she has a direct action against CQB, Lederle's subsidiary. Furthermore, under Brazilian law, de Melo may recover lost wages, indirect losses, and twice the amount of her medical expenses. These damages, whatever they amount to in this case, are not so paltry as to render the available remedy illusory.

The affidavits also establish that contingency fee arrangements are not uncommon, and free legal assistance is available. Although Brazil may be a less favorable forum for de Melo, we cannot conclude that it is inadequate. *Cf. De Oliveira v. Delta Marine Drilling Co.,* 707 F.2d 843, 846–47 (5th Cir.1983) (no evidence Brazil is inadequate forum); *Vaz Borralho v. Keydril Co.,* 696 F.2d 379, 392–94 (5th Cir.1983) (same); *Santamauro v. Taito do Brasil Industria E Comercia Ltda.,* 587 F.Supp. 1312, 1316 (E.D.La.1984) (same).

2. We need not decide whether, under *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), Minnesota or federal law of *forum non conveniens* applies in this diversity action, *see Piper Aircraft,* 454 U.S. at 248, 102 S.Ct. at 262; Minnesota law of *forum non conveniens* is virtually identical to federal law. *See Berquist v. Medtronics, Inc.,* 379 N.W.2d 508 (Minn.1986).

3. The Court also held that the fact that a defendant may be engaged in reverse forum shopping—filing a motion to dismiss for *forum non conveniens* to obtain a favorable change in law in a foreign forum—should not enter the district court's analysis. 454 U.S. at 252 n. 19, 102 S.Ct. at 264 n. 19.

## C.

The second phase of the *forum non conveniens* inquiry requires the district court to balance the private interest factors, which affect the convenience of the litigants, and the public interest factors, which affect the convenience of the forum. *Piper Aircraft*, 454 U.S. at 241, 102 S.Ct. at 258; *Pain v. United Technologies Corp.*, 637 F.2d 775, 782 (D.C.Cir.1980), *cert. denied*, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981). This balance reflects the central purpose of the *forum non conveniens* inquiry: to ensure that the trial is held at a convenient situs. *Piper Aircraft*, 454 U.S. at 249, 256, 102 S.Ct. at 264.[4]

The factors which bear on the private interest of the litigants include:

> [T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions to the enforcibility [sic] of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial.

*Gilbert*, 330 U.S. at 508, 67 S.Ct. at 801.

We cannot conclude that the district court erred in finding that the private interest factors weighed in favor of Lederle. De Melo properly points out that ease of access to a substantial body of the relevant evidence favors a domestic forum. Most, if not all, of the evidence relating to the development, testing, and manufacture of Myambutol—and thus the adequacy of warnings accompanying domestically produced Myambutol—presumably is located in New York or New Jersey. Moreover, she points out, litigation in Brazil will require cumbersome translation into Portuguese of all documents located in the United States. *Cf. Friends For All Chidren, Inc. v. Lockheed Aircraft Corp.*, 717 F.2d 602, 608 (D.C.Cir.1983) (burden of translating documents into foreign languages for foreign fora is consideration "not easily ignored").

Countervailing considerations, however, indicate that the balance of private interests was properly struck in favor of a Brazilian forum. First, de Melo's argument only accounts for the location of evidence directly relevant to her failure to warn theory, which she obviously views as her most potent claim. Evidence that Lederle is likely to consider relevant to its defense, such as evidence of CQB's manufacture, distribution, advertisement, and labelling of Myambutol, is in Brazil.[5] Additionally, all the evidence relating to de Melo's illness, course of treatment (by approximately ten physicians), ingestion of Myambutol and injuries—evidence necessary regardless of the theory of recovery—

---

4. There is ordinarily a strong presumption that a plaintiff's choice of forum will not be disturbed, absent a clear indication that it would be unnecessarily burdensome for the defendant or the court. *See Piper Aircraft*, 454 U.S. at 255 & n. 23, 102 S.Ct. at 266 n. 23; *Gilbert*, 330 U.S. at 508. The district court properly acknowledged, however, that the plaintiff's choice is entitled to substantially less deference when the plaintiff is foreign. *See Piper Aircraft*, 454 U.S. at 255–56, 102 S.Ct. at 264. In such a case, the assumption underlying the presumption, that the plaintiff has chosen the forum for her convenience, is less reasonable. *Id.* It is thus more likely that the forum was chosen to take advantage of favorable law or harass the defendant, both of which suggest that dismissal for *forum non conveniens* is warranted. *Id.* at 249 n. 15, 102 S.Ct. at 262 n. 15.

5. De Melo's argument assumes that Lederle Laboratories had total and complete control over the production and distribution of Myambutol and the warnings that accompany the drug. De Melo asserts in her brief that this is an "undisputed fact." Brief of Appellant at 9–10. She offers portions of the licensing agreement between American Cyanamid and its Brazilian subsidiary, CQB, and statements from depositions of corporate officers of CQB which tend to support this position. However, Lederle "strongly disputes" that it possesses plenary control over CQB's production of Myambutol and product warnings. Brief of Appellee at 6.

is in Brazil. It is clear, therefore, that a substantial amount of testimonial and documentary evidence will be found in Brazil. And, in light of Lederle's evidentiary needs in Brazil, it is apparent that the translation problem will be oppressive regardless of the forum.

It is of considerable importance, moreover, that litigation in the United States would deprive Lederle of compulsory process to much of the evidence located in Brazil, including the circumstances surrounding de Melo's course of treatment before and after ingesting Myambutol. The district court avoided the converse problem—that de Melo would be without compulsory process to secure evidence in this country if the litigation were held in Brazil—by conditioning dismissal on its agreement to make available in the Brazilian courts all relevant witnesses and evidence located in the United States. *Cf. Piper Aircraft*, 454 U.S. at 257 n. 25, 102 S.Ct. at 267 n. 25 (approving use of conditional dismissals to ensure plaintiff access to sources of proof). Although litigation in this country would afford de Melo greater access to sources of proof relevant to *her* theory, it would box out Lederle from access to concededly important evidence upon which its defense may well rest. *See Pain*, 637 F.2d at 787–88 (relying on *Dahl v. United Technologies Corp.*, 632 F.2d 1027, 1030 (3d Cir.1980)). "Thus, so long as trial were to be conducted in the United States, the inability of both parties to obtain the full panoply of relevant * * * evidence would greatly hinder fair resolution of the dispute." *Id.* at 788; *see also Piper Aircraft*, 454 U.S. at 258, 102 S.Ct. at 267 (witnesses beyond domestic compulsory process a factor in favor of *forum non conveniens* dismissal); *Lockheed Aircraft Corp.*, 717 F.2d at 608 (same).

A second private interest strongly favoring dismissal is Lederle's inability to implead potential third-party defendants in domestic litigation. Lederle has indicated that it is likely to implead de Melo's physicians, the pharmacy from which she purchased the drug, and employees of CQB. De Melo correctly notes that Lederle could maintain a suit for indemnity or contribution against potential third-party defendants in Brazil were it found liable in an action here. However, as the Supreme Court noted in *Piper Aircraft* in response to a similar argument, "[i]t would be far more convenient * * * to resolve all claims in one trial * * *. Finding that * * * trial in the plaintiff's chosen forum would be burdensome [to the defendant] * * * is sufficient to support dismissal on grounds of *forum non conveniens.*" 454 U.S. at 259, 102 S.Ct. at 268. Therefore, from the standpoint of the convenience of the parties, we believe that the district court reasonably concluded that the litigation was more appropriate in Brazil.

We also believe that the district court's balancing of the public interest factors was reasonable. The public interest factors, which bear on the convenience of the forum, include:

> The administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft*, 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6 (quoting *Gilbert*, 330 U.S. at 509, 67 S.Ct. at 843).

The parties' factual allegations make it clear that neither forum can lay exclusive claim to a "local interest" precisely because this is not an entirely "localized controversy." *See Gilbert*, 330 U.S. at 509, 67 S.Ct. at 843. It is abundantly clear that the forum de Melo has chosen, Minnesota, has no peculiar local interest in this dispute. Further, insofar as there may be a general national interest in resolving this controversy in a domestic forum, we do not believe it is significant in light of Brazil's interests. *See Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 615 (6th Cir.

1984), *aff'g* 545 F.Supp. 1130 (S.D.Ohio 1982); *Pain,* 637 F.2d at 792–93; *cf. Piper Aircraft,* 454 U.S. at 260, 102 S.Ct. at 268 (plaintiff's argument that "American citizens have an interest in ensuring that American manufacturers are deterred from producing defective products" insufficient because any additional deterrence gained from domestic forum over particular foreign forum "is likely to be insignificant").

The crux of this suit concerns the safety of drugs distributed in Brazil: it involves a Brazilian woman who ingested a drug manufactured, distributed, and labelled in Brazil, pursuant to a course of treatment prescribed by Brazilian physicians, purchased from a pharmacy in Brazil, which resulted in an injury and subsequent treatment in Brazil. It would seem that Brazil has a paramount interest in regulating the quality and distribution of drugs through Brazilian products liability law. *See Dowling,* 727 F.2d at 615 (states where suit brought and where defendant corporation headquartered "have a minimal interest in the safety of products which are manufactured, regulated and sold abroad by foreign entities, even though the development and testing occurred in this country."); *Harrison v. Wyeth Laboratories,* 510 F.Supp. 1, 4 (E.D. Pa.1980), *aff'd mem.,* 676 F.2d 685 (3rd Cir.1982) (question as to safety of drugs marketed in foreign country, even if all production and marketing decisions made in defendant's headquarters in United States, properly the concern of the foreign country). *See also Pain,* 637 F.2d at 793; *Dahl,* 632 F.2d at 1032. Thus, the "local interest in having local controversies decided at home," *Gilbert,* 330 U.S. at 509, 67 S.Ct. at 843, favors litigation in Brazil.

Additionally, the striking fact that this litigation lacks any significant contact with the particular forum chosen by de Melo suggests that it is inappropriate to burden that community with the "enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried there."[6] *Piper Aircraft,*

454 U.S. at 261, 454 U.S. at 268. The only states that have any material connection to this litigation are New York and New Jersey. There simply is no justification for adding to the local docket in Minnesota or imposing jury duty on Minnesota residents on a matter which affects the forum and its residents in such a minimal fashion. *Cf. Pain,* 637 F.2d at 792 (district court properly held that community in plaintiff's chosen forum should not be burdened by dispute which had no significant relationship or contacts with forum).

Finally, the district court held that, under Minnesota conflict of law rules, Brazilian law would likely govern the litigation. This conclusion, particularly in light of the other public factors favoring a foreign forum, strongly supports dismissal for *forum non conveniens. Piper Aircraft,* 454 U.S. at 260 n. 29, 102 S.Ct. at 268 n. 29. There is, as the Court stated in *Gilbert,* a strong interest in resolving a dispute "in a forum that is at home with the law that must govern the action." 330 U.S. at 509, 67 S.Ct. at 843. Our review of these factors leads us to conclude that the district court's balancing of the private and public factors was reasonable.

The judgment of the district court is therefore affirmed.

SWYGERT, Senior Circuit Judge, dissenting.

I must respectfully dissent from the decision of my brethren to affirm the judgment of the district court dismissing Ms. de Melo's products liability claims against Lederle Laboratories on *forum non conveniens* grounds.

A motion to dismiss on the basis of *forum non conveniens* shall not be granted unless an adequate alternative forum exists. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). If the remedy provided by a proposed alternative forum is "so clearly inadequate or unsatisfactory that it is no remedy at all"

---

**6.** Minnesota apparently was chosen as a forum because de Melo's attorney, the father of a

Peace Corps worker de Melo met in Brazil, lives in Minnesota.

the proposed alternative forum may not be an adequate alternative. *Piper Aircraft co. v. Reyno,* 454 U.S. 235, 254 and n. 22, 102 S.Ct. 252, 265 and n. 22, 70 L.Ed.2d 419 (1981). The inquiry into whether an adequate alternative forum exists is a threshold issue that must be crossed before a court may weigh the public and private interests in a suit brought by a foreigner in the courts of the United States. *Friends for All Children v. Lockheed Aircraft Corp.,* 717 F.2d 602, 606 (D.C.Cir.1983).

The evidence before the district court regarding the Brazilian legal system was presented by the parties and was conflicting in many respects: De Melo presented an affidavit from a Brazilian attorney, dos Santos. Lederle submitted a letter from another Brazilian attorney, Ibeas. Dos Santos and Ibeas agree that in Brazil there is no recovery for pain or suffering and that punitive damages are unknown. Ibeas stated that attorneys do take tort cases on a contingent basis. Dos Santos stated that de Melo would be unlikely to find an attorney willing to represent her on that basis. Dos Santos believes the case could take twenty years to be heard. Ibeas believes it will take two to five. Ibeas doubts de Melo could recover even $10,000 despite her permanent blindness. On this sketchy and contradictory evidence concerning applicable Brazilian law, I am unwilling to say that Brazil is an adequate alternative forum.[1]

At the same time, I am troubled by some of the silent assumptions lurking beneath the adequate alternative forum doctrine. The decision to hear a case ought not to depend on a subjective determination of whether another nation's legal system is "adequate." Adequate by what standards? Unfortunately, in litigation crossing national boundaries, comparisons of national legal systems must inevitably be drawn. My chief disagreement with the majority is that I would require more knowledge about a legal system before being willing to sanc-

tion the dismissal of a potentially meritorious suit and before entrusting that suit to another country's legal system. Consequently, I would remand for a hearing to determine de Melo's rights and Lederle's responsibilities under Brazilian law.

With respect to the balance of both the private and public interests, the district court adopted an overly-narrow view of those interests. Lederle would be put to relatively little inconvenience in defending de Melo's claim in the United States. Much of the documentary evidence is either in New York or under defendant's control in Brazil. Discovery in Brazil would be no problem to the defendant, and even though it hints there might be third-party defendants in Brazil who could not be impleaded in the present action, there is no disavowal that it would be prevented from seeking contribution or indemnity in Brazil. Indeed, it could be argued that it would be more of a convenience to the defendant to try the case in the United States than in Brazil. Accordingly, we should heed the admonition in *Gulf Oil Corp.,* 330 U.S. at 508, 67 S.Ct. at 843, that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."

Finally, I cannot help observing that Lederle is a multinational corporation. It has chosen to do business in Brazil. When such companies do business in foreign countries they should not, by that fact, manage to evade the force of American law. De Melo ingested the drug in Brazil. But the decision to warn of only temporary blindness occurred in the United States, and was made by United States citizens in the employ of a United States corporation. These facts suggest that the United States is the most appropriate forum to hear Ms. de Melo's complaint.

---

1. The district court was also apparently less than completely convinced that Brazilian law, unaided by the four conditions it placed upon the defendant, would provide an adequate alternative forum.